**BSI Financial Services**

314 S Franklin St / Second Floor
PO Box 517
Titusville PA 16354
800-327-7861
814-217-1366 Fax
www.bsifinancial.com

<u>Sent via First Class Mail</u>

January 17, 2018

Maynes Taggart, PLLC
Attn: Steven L. Taggart
P.O. Box 3005
Idaho Falls, ID  83403

RE:    Borrower Name: David O. Kingston
       Account Number:  1461015125
       Property Address:  5250 S Rainbow Blvd, Unit 2063, Las Vegas, NV  89118

Dear Steven L. Taggart:

We received your client's letter dated November 30, 2017, regarding the above-referenced loan, addressed to BSI Financial Services (BSI), which was forwarded to my attention for review and response. Due to your representation of the borrower, we are sending our response directly to you.

BSI has reviewed its file documents and conducted an investigation in an attempt to obtain information responsive to your client's inquiry which is consistent with a request to validate the debt and the reporting of that debt, made under 15 U.S.C. § 1692. The results are set forth below and in documents attached hereto.

The loan is evidenced by an Interest Only Adjustable Rate Note dated March 13, 2007, in the principal amount of $162,500.00 executed by the customer in favor of Countrywide Home Loans, Inc., a copy of which is enclosed. This loan is secured by a Deed of Trust dated the same date, a copy of which is also enclosed.

Our records indicate that the loan was transferred to BSI for servicing and a Notice of Servicing Transfer was mailed on June 7, 2017.  Furthermore, enclosed please find a payment history that provides a detailed outline of pertinent information on payments received, tax and insurance, payments disbursed, and late charges, if any, assessed and paid transactions for this loan during BSI's servicing.

Licensed as Servis One, Inc. dba BSI Financial Services.
BSI Financial Services NMLS # 38078. Customer Care Hours: Mon. – Fri. 8:00 am to 11:00 pm (ET), Sat. 8:00 am to 12:00 pm (ET). Colorado Office Location: 13111 E. Briarwood Ave., Suite 340, Centennial, CO 80112 (303) 309-3839. Licensed as a Debt Collection Agency by the New York City Department of Consumer Affairs, (# 2001485-DCA). North Carolina Collection Agency Permit (# 105608).
If you have filed a bankruptcy petition and there is an "automatic stay" in effect in your bankruptcy case or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally. If either of these circumstances apply, this notice is not and should not be construed to be a demand for payment from you personally.  Unless the Bankruptcy Court has ordered otherwise, please also note that despite any such bankruptcy filing, whatever rights we hold in the property that secures the obligation remain unimpaired.

**EXHIBIT "MM"**
**Page 1 of 57** Page 1 of 3

RECEIVED 2018.01.22



314 S Franklin St / Second Floor
PO Box 517
Titusville PA 16354
800-327-7861
814-217-1366 Fax
www.bsifinancial.com

We have enclosed the following additional documents:

- Stipulation Between David O. Kingston and Bank of America

BSI must provide accurate and truthful information to all Credit Reporting Agencies. Based upon this documentation, we have concluded that the information that we have reported to the credit reporting agencies is correct. If your client's credit report contains different or older information, we apologize for any inconvenience this may be causing; sometimes it takes several weeks for a loan servicer's information to be included in a credit report.

BSI reports credit data to the following credit repositories: Equifax, Experian and TransUnion. Therefore, we are only able to validate information appearing on reports produced by these agencies. If your client needs additional information to assist your client in obtaining an official credit report and initiating a dispute through these agencies, information is available directly from their websites or through the Federal Trade Commission website, which offers consumer resources at www.consumer.ftc.gov.

Your client will need to discuss any further issues or concerns with the credit reporting regarding this account with the credit reporting agencies.  Their contact information is below.

| **Equifax** | **Trans Union** | **Experian** |
|---|---|---|
| P.O. Box 740241 | P.O. Box 1000 | P.O. Box 2002 |
| Atlanta, GA 30374 | Chester, PA 19022 | Allen, TX 75013 |
| 800-685-1111 | 800-888-4213 | 800-888-4213 |

BSI Financial Services
Attn: Qualified Written Requests
PO Box 517
314 S Franklin Street
Titusville, PA 16354

If your client has any other questions regarding this matter, please contact BSI toll-free at 1-800-327-7861.

Licensed as Servis One, Inc. dba BSI Financial Services.

BSI Financial Services NMLS # 38078. Customer Care Hours: Mon. – Fri. 8:00 am to 11:00 pm (ET), Sat. 8:00 am to 12:00 pm (ET). Colorado Office Location: 13111 E. Briarwood Ave., Suite 340, Centennial, CO 80112 (303) 309-3839. Licensed as a Debt Collection Agency by the New York City Department of Consumer Affairs, (# 2001485-DCA). North Carolina Collection Agency Permit (# 105608).

If you have filed a bankruptcy petition and there is an "automatic stay" in effect in your bankruptcy case or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally. If either of these circumstances apply, this notice is not and should not be construed to be a demand for payment from you personally.  Unless the Bankruptcy Court has ordered otherwise, please also note that despite any such bankruptcy filing, whatever rights we hold in the property that secures the obligation remain unimpaired.



314 S Franklin St / Second Floor
PO Box 517
Titusville PA 16354
800-327-7861
814-217-1366 Fax
www.bsifinancial.com

HOURS:

Monday – Friday 8:00 am to 11:00 pm (ET)
Saturday 8:00 am to 12:00 pm (ET)

Sincerely,
Megan Porcenaluk
Complaint Resolution Specialist
BSI Financial Services
NMLS # 38078; # 126672

This is an attempt to collect a debt.  Any information obtained will be used for that purpose.

Licensed as Servis One, Inc. dba BSI Financial Services.
BSI Financial Services NMLS # 38078. Customer Care Hours: Mon. – Fri. 8:00 am to 11:00 pm (ET), Sat. 8:00 am to 12:00 pm (ET). Colorado Office Location: 13111 E. Briarwood Ave., Suite 340, Centennial, CO 80112 (303) 309-3839. Licensed as a Debt Collection Agency by the New York City Department of Consumer Affairs, (# 2001485-DCA). North Carolina Collection Agency Permit (# 105608).
If you have filed a bankruptcy petition and there is an "automatic stay" in effect in your bankruptcy case or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally. If either of these circumstances apply, this notice is not and should not be construed to be a demand for payment from you personally.  Unless the Bankruptcy Court has ordered otherwise, please also note that despite any such bankruptcy filing, whatever rights we hold in the property that secures the obligation remain unimpaired.

2017-11-30

**Bsi Financial Services**
**314 S Franklin St**
**Titusville, PA  16354**


Dear Bsi Financial Services,

I am asking Bsi Financial Services to verify account materials transmitted to credit CRAs for me, David Kingston, for account number 1461015125. Since damaging errors may be present within my account files, I formally request that Bsi Financial Services provide the formal validation quickly. In addition, please formally concur that this account was unencumbered by any consumer protection encumbrance during the period it may have been payable. Forward more than a review without detail. In lieu of that, I have requisitioned a substantive validation.

If these requests cannot be met within one month, summary data dispatched by Bsi Financial Services to the major consumer reporting agencies should be regarded as fallacious and may evince an intention to willfully violate the Fair Credit Reporting Act. In that case, you should retract such credit bureau data immediately.


Thank you for your assisting with this matter.

Yours truly,

David Kingston

**David Kingston**
**477 Shoup Ave**
**Idaho Falls, ID  83402**



David Kingston
477 Shoup Ave
Idaho Falls, ID 83402

Bsi Financial Services
314 S Franklin St
Titusville, PA 16354

KBFDSS2 16354

Prepared by: CONNIE R. BROWN

ORIGINAL

# 29015125

LOAN #: 159182175

## INTEREST ONLY ADJUSTABLE RATE NOTE
### (One-Year LIBOR Index (As Published In *The Wall Street Journal*)
### Rate Caps – 10 Year Interest Only Period)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

MARCH 13, 2007                    HENDERSON                      NEVADA
[Date]                             [City]                        [State]

5250 S RAINBOW BLVD UNIT 2063, LAS VEGAS, NV 89118-0633
[Property Address]

### 1.   BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 162,500.00        (this amount is called "Principal"), plus interest, to the order of Lender. Lender is
COUNTRYWIDE HOME LOANS, INC.
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2.   INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    6.250 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3.   PAYMENTS

#### (A) Time and Place of Payments

I will make a payment on the first day of every month, beginning on   MAY 01, 2007        . Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its

● MULTISTATE ARM, ONE-YEAR LIBOR, 10-Year Interest Only Period Note
1E452-XX (09/06)(d/i)                        Page 1 of 5



610   159182175   N   001   001



* 1 5 9 1 8 2 1 7 5 0 0 0 0 0 1 E 4 5 2 *

**EXHIBIT "MM"**
**Page 6 of 57**

LOAN #: 159182175

scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on **APRIL 01, 2037**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **P.O. Box 10219, Van Nuys, CA 91410-0219** or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**
Each of my initial monthly payments will be in the amount of U.S. $ **846.35** until the first Change Date. After the first Change Date, my monthly payment will be in an amount sufficient to pay accrued interest, at the rate determined as described in Section 4 of this Note until the First Principal and Interest Payment Due Date. On that date and thereafter, my monthly payment will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of changes in monthly payment.

**(C) Monthly Payment Changes**
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

**4.    ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**(A) Change Dates**
The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of **APRIL, 2014**, and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**
Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding **TWO & ONE-QUARTER** percentage points ( **2.250** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. If I make a voluntary payment of principal before the First Principal and Interest Payment Due Date, my payment amount for subsequent payments will be reduced to the amount necessary to repay all accrued interest on the reduced principal balance at the current interest rate. For payment adjustments occurring on or after the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay unpaid principal and interest that I am expected to owe in full on the Maturity Date at the current interest rate in substantially equal payments.

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than **11.250** % or less than **2.250** %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than **11.250** %.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

● MULTISTATE ARM, ONE-YEAR LIBOR, 10-Year Interest Only Period Note
1E452-XX (09/06)                    Page 2 of 5

**EXHIBIT "MM"**
**Page 7 of 57**

LOAN #: 159182175

**(F) Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be that date which is the 10th anniversary date of the first payment due date, as reflected in Section 3(A) of the Note.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of   FIFTEEN        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be       5.000  % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**EXHIBIT "MM"**
**Page 8 of 57**

LOAN #: 159182175

**8.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.   UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A)   Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B)   When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

LOAN #: 159182175

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_David O. Kingston by Brian Burnham Attorney in Fact_ (Seal)
DAVID O. KINGSTON                                              -Borrower

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC

BY _Michele Sjolander_

MICHELE SJOLANDER
EXECUTIVE VICE PRESIDENT

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

*[Sign Original Only]*

● MULTISTATE ARM, ONE-YEAR LIBOR, 10-Year Interest Only Period Note
1E452-XX (09/06)                    Page 5 of 5

**EXHIBIT "MM"**
**Page 10 of 57**

20070402-0003063

Fee $46.00
N/C Fee $25.00

04.02.2007                    13 58 53
T20070057333

Requestor:
NATIONAL ALLIANCE TITLE

Debbie Conway               RHS
Clark County Recorder      Pgs  33

RECALL SCAL

F0140005283024

I here
submit
contain

610   159182175   D2 001 001

Signature

Print name & title

APN# 163-26-214-127

Recording Requested By:

Name: Countrywide Home Loans.

Address: 2850 W. Horizon Ridge Pkwy

City/State/Zip: Henderson, NV. 89052-3901

## DEED OF TRUST

If legal description is a metes & bounds description furnish the following information:

Legal Description obtained from                                              (type
of document), Book              Page              Document #
recorded                        (date) in the
County Recorder office.

If Surveyor, please provide name and address.

This page added to provide additional information required by NRS 111.312 Sections 1-4.
(Additional recording fee applies)

This cover page must be typed.

**NV Affirmation Cover Sheet - 2/06**

VMP®-368C(NV) (0602)

**EXHIBIT "MM"**
**Page 11 of 57**

Assessor's Parcel Number:
163-26-214-127

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.


MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
CONNIE R. BROWN
Recording Requested By:
C. CHANNEL


COUNTRYWIDE HOME LOANS, INC.


2850 W.HORIZON RIDGE
PKWY.#100
HENDERSON
NV 89052-3901

———————————————[Space Above This Line For Recording Data]———————————————

NAT21011206          00015918217503007
[Escrow/Closing #]        [Doc ID #]

## DEED OF TRUST

MIN 1001337-0001993798-9


DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections 3,
11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in
Section 16.

**NEVADA**-Single Family- **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

Page 1 of 16

 -6A(NV) (0507) CHL (11/05)(d)

VMP Mortgage Solutions, Inc.

**Form 3029 1/01**



**EXHIBIT "MM"**
**Page 12 of 57**

DOC ID #: 00015918217503007

**(A) "Security Instrument"** means this document, which is dated  MARCH 13, 2007  ,
together with all Riders to this document.
**(B) "Borrower"** is
DAVID O KINGSTON, AN UNMARRIED MAN

Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is
COUNTRYWIDE HOME LOANS, INC.

Lender is a
CORPORATION

organized and existing under the laws of  NEW YORK                              . Lender's address is
4500 Park Granada MSN# SVB-314
Calabasas, CA 91302-1613
**(D) "Trustee"** is
RECONTRUST COMPANY, N.A.

225 W HILLCREST DRIVE, MSN: TO-02
THOUSAND OAKS, CA 91360
**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this
Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and
telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F) "Note"** means the promissory note signed by Borrower and dated  MARCH 13, 2007          .
The Note states that Borrower owes Lender
ONE HUNDRED SIXTY TWO THOUSAND FIVE HUNDRED and 00/100

Dollars (U.S. $ 162,500.00        ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than  APRIL 01, 2037        .
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [X] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [X] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**EXHIBIT "MM"**
**Page 13 of 57**

DOC ID #: 00015918217503007

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower

**EXHIBIT "MM"**

**Page 14 of 57**

DOC ID #: 0001591821750307

irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the  COUNTY

[Type of Recording Jurisdiction]

CLARK                                                                          :

[Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

which currently has the address of

5250 S RAINBOW BLVD UNIT 2063, LAS VEGAS

[Street/City]

Nevada  89118-0633   ("Property Address"):

[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

VMP -6A(NV) (0507)  CHL (11/05)          Page 4 of 16                    Form 3029  1/01

**EXHIBIT "MM"**

**Page 15 of 57**

DOC ID #: 00015918217503007

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums

DOC ID #: 00015918217503007

any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or

DOC ID #: 00015918217503007

defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be

DOC ID #: 0001591821750 3007

paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is

**EXHIBIT "MM"**
**Page 19 of 57**

DOC ID #: 0001591821750 3007

reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive

EXHIBIT "MM"
Page 20 of 57

DOC ID #: 0001591821750300 7

from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

DOC ID #: 00015918217503007

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

DOC ID #: 0001591821750 3007

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees,

DOC ID #: 00015918217503007

property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

DOC ID #: 0001591821750300 7

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, and without further demand, may invoke the power of sale, including the right to accelerate full payment of the Note, and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Assumption Fee.** If there is an assumption of this loan, Lender may charge an assumption fee of U.S. $    300.00

-6A(NV) (0507)    CHL (11/05)        Page 14 of 16                Form 3029  1/01

DOC ID #: 00015918217503007

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_David O. Kingston by Brian Bauchman Attorney in Fact_ (Seal)

DAVID O. KINGSTON                                        -Borrower

_BRIAN BAUCHMAN AS_
_ATTORNEY IN FACT_

_____(Seal)
                                                        -Borrower

_____(Seal)
                                                        -Borrower

_____(Seal)
                                                        -Borrower

**EXHIBIT "MM"**
**Page 26 of 57**

**STATE OF NEVADA,**

**COUNTY OF** _Clark_ } ss.

ON _March 27. 2007_ , 19___ ,
before me, the undersigned, a Notary Public in and for said State, personally appeared
_Brian Bauchman._
known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name
is subscribed to the within Instrument, as the Attorney-in-Fact of _David O._
_Kingston_
and acknowledged to that____he subscribed the name of _Brian Bauchman._
thereto as principal____and h _i s_ own name as Attorney-in-Fact.
WITNESS my hand and official seal.

L VELKO
NOTARY PUBLIC
STATE OF NEVADA
Date Appointment Exp: 07-20-2010
Certificate No: 98-4561-1

_L Velko_

NAME (TYPED OR PRINTED)
Notary Public in and for said State

Form No. 1000063

**EXHIBIT "MM"**

DOC ID #: 00015918217503007

**STATE OF NEVADA**
**COUNTY OF**

This instrument was acknowledged before me on _____ by

_____

_____

_____

_____

_____.

_____

Mail Tax Statements To:
DAVID KINGSTON

5250 S RAINBOW BLVD #2109
LAS VEGAS, NV 89118

**EXHIBIT "MM"**
**Page 28 of 57**

Prepared by: CONNIE R. BROWN

## COUNTRYWIDE HOME LOANS, INC.

Branch #: 0000323
2850 W.HORIZON RIDGE PKWY.#100
HENDERSON, NV 89052-3901
Phone: (702)434-7644
Br Fax No.: (702)434-7536

DATE:          03/13/2007
CASE #:
DOC ID #:      00015918217503007
BORROWER: DAVID O. KINGSTON
PROPERTY ADDRESS: 5250 S RAINBOW BLVD UNIT 2063
                  LAS VEGAS, NV 89118-0633

### LEGAL DESCRIPTION EXHIBIT A

FHA/VA/CONV
• Legal Description Exhibit A
1D955-NV (07/03)(d)





**EXHIBIT "MM"**
**Page 29 of 57**

 **BSI** *Financial*
**Services**

314 S Franklin St / Second Floor
PO Box 517
Titusville PA 16354
888-738-5873
814-217-1366 Fax
www.bsifinancial.com

June 7, 2017                                    12                        Sent via First Class Mail

DAVID O KINGSTON
477 SHOUP AVE STE 20
IDAHO FALLS, ID 83402

New Account Number: 1461015125
Old Account Number: 29015125

### NOTICE OF SERVICING TRANSFER

The servicing of your mortgage loan is being transferred to BSI Financial Services, ("BSI Financial"), effective 6/1/2017. This means that after this date, a new Servicer will be collecting your mortgage loan payments from you. Nothing else about your mortgage loan will change.

Seterus, Inc., your prior servicer, was collecting your payments. Seterus, Inc., will not accept any payments received by you after the day preceding 6/1/2017.

As your new servicer, BSI Financial will start accepting payments received from you on or after 6/1/2017.

BSI Financial will collect your payments going forward. As your new servicer, BSI Financial will start accepting payments received from you on or 6/1/2017.

**Send all payments due on or after 6/1/2017 to BSI Financial at this address:**
**BSI Financial Services**
PO Box 679002
Dallas, TX 75267

If you have any questions for either your prior servicer, Seterus, Inc., or your new servicer BSI Financial, about your mortgage loan or this transfer, please contact them using the information below:

Licensed as Servis One, Inc. dba BSI Financial Services
BSI Financial Services NMLS # 38078. Customer Care Hours: Mon. - Fri. 8:00 am to 11:00 pm (ET) and Sat. 8:00 am to 12:00 pm (ET).
If you have filed a bankruptcy petition and there is an "automatic stay" in effect in your bankruptcy case or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally. If either of these circumstances apply, this notice is not and should not be construed to be a demand for payment from you personally. Unless the Bankruptcy Court has ordered otherwise, please also note that despite any such bankruptcy filing, whatever rights we hold in the property that secures the obligation remain unimpaired.

EXHIBIT "MM"

 **BSI Financial Services**

314 S Franklin St / Second Floor
PO Box 517
Titusville PA 16354
888-738-5873
814-217-1366 Fax
www.bsifinancial.com

**Prior Servicer:**
Seterus, Inc.
Customer Care
PO Box 1077
Hartford, CT 06143
866-570-5277

**New Servicer:**
BSI Financial Services
Customer Care
314 S Franklin St, 2nd Floor
Titusville, PA  16354
888-738-5873

**Under Federal law, during the 60 day period beginning on the effective date of the transfer of the loan, a loan payment received by your old servicer on or before its due date (including any grace period allowed under the mortgage loan instruments) may not be treated by the new servicer as late, and a late fee may not be imposed on you.**

If you are currently having your payments automatically withdrawn from your checking or savings account, they will stop that service on 5/31/2017.  Please be sure to send a check to BSI Financial, for your next payment.  If you would like to continue having your payment automatically withdrawn, BSI will be glad to set you up on our Automatic Withdrawal Program. Please call and ask for an ACH representative. You will be receiving a monthly statement in the mail from BSI.  The following payment options are available to make your mortgage payment: regular mail, expedited or overnight mail such as UPS or FedEx, ACH weekly, ACH bi-weekly, ACH monthly, Pay by Web, Pay by Phone and Western Union.

We look forward to servicing your loan.  Please contact us at 888-738-5873 with any questions or concerns.

 Sincerely,
Customer Care Department
BSI Financial Services
NMLS # 38078; # 126672

* This is an attempt to collect a debt.  Any information obtained will be used for that purpose.

Important note about insurance: If you have mortgage life or disability insurance or any other type of optional insurance, the transfer of servicing rights may not affect your insurance because we do not service mortgage life or disability premiums. However, if you wish to retain optional insurance, we would suggest that you contact your current optional product service provider.

Licensed as Servis One, Inc. dba BSI Financial Services
BSI Financial Services NMLS # 38078.  Customer Care Hours: Mon. - Fri. 8:00 am to 11:00 pm (ET) and Sat. 8:00 am to 12:00 pm (ET).
If you have filed a bankruptcy petition and there is an "automatic stay" in effect in your bankruptcy case or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally. If either of these circumstances apply, this notice is not and should not be construed to be a demand for payment from you personally. Unless the Bankruptcy Court has ordered otherwise, please also note that despite any such bankruptcy filing, whatever rights we hold in the property that secures the obligation remain unimpaired.

**EXHIBIT "MM"**
**Page 31 of 57**


**BSI Financial Services**

314 S Franklin St / Second Floor
PO Box 517
Titusville PA 16354
888-738-5873
814-217-1366 Fax
www.bsifinancial.com

### Qualified Written Request - Notice of Error or Information Request

Under the Real Estate Settlement Procedures Act, a qualified written request is a written correspondence (other than notice on your payment coupon or other payment medium supplied by us) regarding the servicing of your loan which identifies your name, account number, and the specific reasons for the request, such as an error on your loan account or a request for information.  Any qualified written request you wish to submit must be sent to:

**BSI Financial Services**
Attn: Qualified Written Requests
PO Box 517, 314 S Franklin St, 2nd Floor
Titusville, PA 16354

Licensed as Servis One, Inc. dba BSI Financial Services
BSI Financial Services NMLS # 38078.  Customer Care Hours: Mon. - Fri. 8:00 am to 11:00 pm (ET) and Sat. 8:00 am to 12:00 pm (ET).
If you have filed a bankruptcy petition and there is an "automatic stay" in effect in your bankruptcy case or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally. If either of these circumstances apply, this notice is not and should not be construed to be a demand for payment from you personally.  Unless the Bankruptcy Court has ordered otherwise, please also note that despite any such bankruptcy filing, whatever rights we hold in the property that secures the obligation remain unimpaired.

EXHIBIT "MM"

 **BSI Financial Services**

314 S Franklin St / Second Floor
PO Box 517
Titusville PA 16354
888-738-5873
814-217-1366 Fax
www.bsifinancial.com

June 7, 2017

DAVID O KINGSTON
477 SHOUP AVE STE 20
IDAHO FALLS, ID 83402

RE: Account Number: **1461015125**
Property Address: **5250 S RAINBOW BLVD**
**LAS VEGAS, NV 89118**

Dear Borrower:

Welcome to BSI Financial Services ("BSI Financial"). The servicing of your loan with Seterus, Inc.,
been transferred to BSI Financial, and BSI Financial is servicing the loan on behalf of the current creditor U.S.
BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF BUNGALOW SERIES F TRUST, to
whom the debt is owed.

As of the date of this letter, your total unpaid principal balance is $84,914.35 due to U.S. BANK TRUST
NATIONAL ASSOCIATION, AS TRUSTEE OF BUNGALOW SERIES F TRUST. As of the date of this
letter, your escrow account balance is $-3,933.64. The total debt inclusive of all past due interest and fees, if
any, is $90,153.29 Because of interest, late charges, and other charges that may vary from day-to-day, the
amount due on the day you pay, may be greater; therefore, if you pay the amount shown above, an adjustment
may be necessary after we receive your check. We will inform you of any adjustments prior to depositing the
check.

For further information, please write to us at the address listed above or call us toll-free at 1-888-738-5873.
Monday - Friday 8:00 a.m. - 11:00 p.m. (ET) and Saturday 8:00 a.m. - 12:00 p.m. (ET).

Unless you notify this office within thirty (30) days after receiving this notice, that you dispute the validity of
this debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing
within thirty (30) days after receiving this notice, that you dispute the validity of this debt, or any portion
thereof, this office will obtain verification of the debt or obtain a copy of the judgment, and mail you a copy
of the judgment or verification. Upon your written request within the thirty (30) day period after receiving this
notice, for the name and address of the original creditor, this office will provide you with the name and address
of the original creditor, if different from the current creditor.

Licensed as Servis One, Inc. dba BSI Financial Services
BSI Financial Services NMLS # 38078. Customer Care Hours: Mon. - Fri. 8:00 am to 11:00 pm (ET) and Sat. 8:00 am to 12:00 pm (ET).
If you have filed a bankruptcy petition and there is an "automatic stay" in effect in your bankruptcy case or you have received a discharge
of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation
from you personally. If either of these circumstances apply, this notice is not and should not be construed to be a demand for payment
from you personally. Unless the Bankruptcy Court has ordered otherwise, please also note that despite any such bankruptcy filing,
whatever rights we hold in the property that secures the obligation remain unimpaired.

**EXHIBIT "MM"**
**Page 33 of 57**



314 S Franklin St / Second Floor
PO Box 517
Titusville PA 16354
888-738-5873
814-217-1366 Fax
www.bsifinancial.com

A consumer has the right to request in writing that a debt collector or collection agency cease further communication with the consumer. A written request to cease communication will not prohibit the debt collector or collection agency from taking any other action authorized by law to collect the debt.

If you have any questions or concerns, please contact our office toll-free at 1-888-738-5873.

Sincerely,

BSI Financial Services
NMLS # 38078; # 126672

This is an attempt to collect a debt. Any information obtained will be used for that purpose.

FXSF_GR-4020-10202015_CA08202015

Licensed as Servis One, Inc. dba BSI Financial Services
BSI Financial Services NMLS # 38078. Customer Care Hours: Mon. - Fri. 8:00 am to 11:00 pm (ET) and Sat. 8:00 am to 12:00 pm (ET).
If you have filed a bankruptcy petition and there is an "automatic stay" in effect in your bankruptcy case or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally. If either of these circumstances apply, this notice is not and should not be construed to be a demand for payment from you personally. Unless the Bankruptcy Court has ordered otherwise, please also note that despite any such bankruptcy filing, whatever rights we hold in the property that secures the obligation remain unimpaired.

**EXHIBIT "MM"**

**Page 34 of 57**

 **BSI Financial Services**

314 S Franklin St / Second Floor
PO Box 517
Titusville PA 16354
888-738-5873
814-217-1366 Fax
www.bsifinancial.com

**Important Information About Your Rights**

BSI Financial Services
1425 Greenway Drive, Suite 400
Irving, TX 75038
(800) 327-7861
Fax: (972) 692-7083
NMLS # 38078
Office Hours: Mon. – Thurs. 8:00 am to 8:00 pm (ET), Fri. 8:00 am to 5:00 pm (ET), Sat. 8:00 am
to 12:00 pm (ET).

Colorado Office Location: 13111 E. Briarwood Ave., Suite 340, Centennial, CO 80112 (303)
309-3839

Licensed as a Debt Collection Agency by the New York City Department of Consumer Affairs, (#
2001485-DCA).

North Carolina Collection Agency Permit (# 105608).

If you have filed a bankruptcy petition and there is an "automatic stay" in effect in your bankruptcy
case or you have received a discharge of your personal liability for the obligation identified in this
letter, we may not and do not intend to pursue collection of that obligation from you personally. If
either of these circumstances apply, this notice is not and should not be construed to be a demand for
payment from you personally. Unless the Bankruptcy Court has ordered otherwise, please also note
that despite any such bankruptcy filing, whatever rights we hold in the property that secures the
obligation remain unimpaired.

**Arkansas Residents**
BSI Financial is currently licensed in the state of Arkansas. Any complaints may be submitted to
http://www.securities.arkansas.gov/ or toll-free: 1-800-981-4429
**California Residents**

The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection
Practices Act require that, except under unusual circumstances, collectors may not contact you
before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by
using obscene language. Collectors may not use false or misleading statements or call you at work
if they know or have reason to know that you may not receive personal calls at work. For the most
part, collectors may not tell another person, other than your attorney or spouse, about your debt.
Collectors may contact another person to confirm your location or enforce a judgment. For more
information about debt collection activities, you may contact the Federal Trade Commission at 1-

Licensed as Servis One, Inc. dba BSI Financial Services
BSI Financial Services NMLS # 38078. Customer Care Hours: Mon. - Fri. 8:00 am to 11:00 pm (ET) and Sat. 8:00 am to 12:00 pm (ET).
If you have filed a bankruptcy petition and there is an "automatic stay" in effect in your bankruptcy case or you have received a discharge
of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation
from you personally. If either of these circumstances apply, this notice is not and should not be construed to be a demand for payment
from you personally. Unless the Bankruptcy Court has ordered otherwise, please also note that despite any such bankruptcy filing,
whatever rights we hold in the property that secures the obligation remain unimpaired.

**EXHIBIT "MM"**
**Page 35 of 57**


**BSI Financial
Services**

314 S Franklin St / Second Floor
PO Box 517
Titusville PA 16354
888-738-5873
814-217-1366 Fax
www.bsifinancial.com

877-FTC-HELP or www.ftc.gov.

**Colorado Residents**

FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES
ACT, SEE WWW.COAG.GOV/CAR.

A consumer has the right to request in writing that a debt collector or collection agency cease
further communication with the consumer. A written request to cease communication will not
prohibit the debt collector or collection agency from taking any other action authorized by law to
collect the debt.

**Maryland Residents**
Per Maryland Code Commercial Law section 13-316(b)(5), BSI is required to inform you that a
servicer's violation of this section will result in a servicer being held liable under subsection (e) of
§ 13-316.

**Massachusetts Residents**

<u>**NOTICE OF IMPORTANT RIGHTS**</u>

You have the right to make a written or oral request that telephone calls regarding your debt not be
made to you at your place of employment. Any such oral request will be valid for only ten days
unless you provide written confirmation of the request postmarked or delivered within seven days
of such request. You may terminate this request by writing to the debt collector.

**New York Residents**

We are required by regulation of the New York State Department of Financial Services to notify you
of the following information. This information is NOT legal advice:

Debt collectors, in accordance with the Fair Debt Collection Practices Act, 15 U.S.C. section 1692
et seq., are prohibited from engaging in abusive, deceptive, and unfair debt collection efforts,
including but not limited to:
(i) the use or threat of violence;
(ii) the use of obscene or profane language; and
(iii) repeated phone calls made with the intent to annoy, abuse, or harass.

Licensed as Servis One, Inc. dba BSI Financial Services
BSI Financial Services NMLS # 38078.  Customer Care Hours: Mon. - Fri. 8:00 am to 11:00 pm (ET) and Sat. 8:00 am to 12:00 pm (ET).
If you have filed a bankruptcy petition and there is an "automatic stay" in effect in your bankruptcy case or you have received a discharge
of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation
from you personally. If either of these circumstances apply, this notice is not and should not be construed to be a demand for payment
from you personally. Unless the Bankruptcy Court has ordered otherwise, please also note that despite any such bankruptcy filing,
whatever rights we hold in the property that secures the obligation remain unimpaired.

**EXHIBIT "MM"**

# 1-4 FAMILY RIDER
### (Assignment of Rents)

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
PARCEL ID #:
163-26-214-127

Prepared By:
CONNIE R. BROWN

NAT21011206          00015918217503007
[Escrow/Closing #]        [Doc ID #]

**MULTISTATE 1 - 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Page 1 of 5

-57R (0411)    CHL (11/04)(d)
VMP Mortgage Solutions, Inc. (800)521-7291

Initials: DOk by BB AIF
**Form 3170 1/01**

*23991*

*15918217500000 1057R*

**EXHIBIT "MM"**
**Page 37 of 57**

DOC ID #: 00015918217503007

THIS 1-4 FAMILY RIDER is made this THIRTEENTH day of MARCH, 2007 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to COUNTRYWIDE HOME LOANS, INC.

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
5250 S RAINBOW BLVD UNIT 2063, LAS VEGAS, NV 89118-0633

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

Initials: DOH by BJB AIF

-57R (0411)        CHL (11/04)        Page 2 of 5        Form 3170 1/01

DOC ID #: 00015918217503007

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Initials: Dok by BB AIF

**VMP®-57R (0411)**      **CHL (11/04)**      Page 3 of 5      Form 3170 1/01

DOC ID #: 0001591821750300 7

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

Initials: DDK by BB AIF
Form 3170 1/01

**EXHIBIT "MM"**
**Page 40 of 57**

DOC ID #: 0001591821750 3007

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_David O. Kingston by Brian Bauchman Attorney in_ (Seal)
DAVID O. KINGSTON   _Brian Bauchman   Fact_ - Borrower
_as Attorney in Fact_

_____ (Seal)
- Borrower

_____ (Seal)
- Borrower

_____ (Seal)
- Borrower

VMP -57R (0411)   CHL (11/04)      Page 5 of 5                Form 3170 1/01

**EXHIBIT "MM"**

DOC ID #: 00015918217503007

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this THIRTEENTH       day of
MARCH, 2007      , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Security Deed  (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Note to
COUNTRYWIDE HOME LOANS, INC.

(the "Lender") of the same date and covering the Property described in the Security Instrument and
located at:
    5250 S RAINBOW BLVD UNIT 2063, LAS VEGAS, NV 89118-0633

[Property Address]
The Property includes a unit in, together with an undivided interest in the common elements of, a
condominium project known as:
                SPANISH PALMS CONDOMINIUMS

[Name of Condominium Project]
(the "Condominium Project"). If the owners association or other entity which acts for the Condominium
Project (the "Owners Association") holds title to property for the benefit or use of its members or
shareholders, the Property also includes Borrower's interest in the Owners Association and the uses,
proceeds and benefits of Borrower's interest.

CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:
    A. Condominium Obligations. Borrower shall perform all of Borrower's obligations under the
Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration
or any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations;
and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and
assessments imposed pursuant to the Constituent Documents.

**MULTISTATE CONDOMINIUM RIDER**-Single Family-**Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT**

Page 1 of 3

VMP -8R (0512)    CHL (12/05)(d)
                VMP Mortgage Solutions, Inc.                    **Form 3140  1/01**





**EXHIBIT "MM"**
**Page 42 of 57**

DOC ID #: 00015918217503007

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**EXHIBIT "MM"**
**Page 43 of 57**

DOC ID #: 00015918217503007

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

_David O. Kingston by Brian Baucham Attorney in Fact_ _____ (Seal)
DAVID O. KINGSTON   *Brian Bauchman*   - Borrower
   *As Attorney Infact*

_____ (Seal)
                                                    - Borrower

_____ (Seal)
                                                    - Borrower

_____ (Seal)
                                                    - Borrower

EXHIBIT "MM"
Page 44 of 57

LOAN #: 159182175

# FIXED/ADJUSTABLE RATE RIDER

(LIBOR One-Year Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS FIXED/ADJUSTABLE RATE RIDER is made this THIRTEENTH     day of
MARCH, 2007       , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to
COUNTRYWIDE HOME LOANS, INC.

("Lender") of the same date and covering the property described in the Security Instrument and located at:
5250 S RAINBOW BLVD UNIT 2063
LAS VEGAS, NV 89118-0633
[Property Address]

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE
TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT
BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME
AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A.    ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial fixed interest rate of       6.250 %. The Note also
provides for a change in the initial fixed rate to an adjustable interest rate, as follows:

**4.    ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
    **(A) Change Dates**
The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of
APRIL, 2014      , and the adjustable interest rate I will pay may change on that day every
12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate,
and each date on which my adjustable interest rate could change, is called a "Change Date."

• FIXED/ARM Rider
Interest First/Only LIBOR One-Year Index
1E460-US (10/05)(d)            Page 1 of 5





LOAN #: 159182175

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO & ONE-QUART percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment. For payment adjustments occurring before the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay all accrued interest each month on the unpaid principal at the new interest rate. If I make a voluntary payment of principal before the First Principal and Interest Payment Due Date, my payment amount for subsequent payments will be reduced to the amount necessary to repay all accrued interest on the reduced principal balance at the current interest rate. For payment adjustments occurring on or after the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay unpaid principal and interest that I am expected to owe in full on the Maturity Date at the current interest rate in substantially equal payments.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11.250 % or less than 2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 11.250 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

• FIXED/ARM Rider
Interest First/Only LIBOR One-Year Index
1E460-US (10/05)                    Page 2 of 5

LOAN #: 159182175

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B.1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

● FIXED/ARM Rider
Interest First/Only LIBOR One-Year Index
1E460-US (10/05)                    Page 3 of 5

**EXHIBIT "MM"**
**Page 47 of 57**

LOAN #: 159182175

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

● FIXED/ARM Rider
Interest First/Only LIBOR One-Year Index
1E460-US (10/05)                          Page 4 of 5

**EXHIBIT "MM"**
**Page 48 of 57**

LOAN #: 159182175

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_David O. Kingston by Brian Bauchman Attorney in Fact_ (Seal)
DAVID O. KINGSTON    BRIAN BAUCHMAN    -Borrower
AS ATTORNEY IN FACT

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

● FIXED/ARM Rider
Interest First/Only LIBOR One-Year Index
1E460-US (10/05)    Page 5 of 5

EXHIBIT "A"

PARCEL I:

UNIT TWO THOUSAND SIXTY THREE (2063) IN BUILDING THIRTEEN (13), OF SPANISH PALMS CONDOMINIUMS, A CONDOMINIUM DEVELOPMENT, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 128 OF PLATS, PAGE 39, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

PARCEL II:

AN UNDIVIDED 1/372 INTEREST AS TENANT IN COMMON IN AND TO THE COMMON ELEMENTS OF SPANISH PALMS CONDOMINIUMS AS SET FORTH IN THE DECLARATION OF COVENANTS, CONDITIONS, AND RESTRICTIONS FOR SPANISH PALMS CONDOMINIUMS RECORDED DECEMBER 28, 2005 IN BOOK 20051228 AS INST. NO. 02679, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

PARCEL III:

THE EXCLUSIVE RIGHT TO USE ASSIGNED LIMITED COMMON ELEMENTS APPURTENANT TO THE UNIT AS SET FORTH IN THAT CERTAIN DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS FOR SPANISH PALMS CONDOMINIUMS RECORDED DECEMBER 28, 2005 IN BOOK 20051228 AS INST. NO 02679, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

PARCEL IV:

A NON-EXCLUSIVE EASEMENT FOR INGRESS AND EGRESS, IN TO, OVER, AND ACROSS THE COMMON ELEMENTS AREAS, ASSOCIATION PROPERTY AND PRIVATE STREETS/DRIVES AS SET FORTH IN THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS FOR SPANISH PALMS CONDOMINIUMS RECORDED DECEMBER 8, 2005, IN BOOK 20051228, AS INST. NO. 02679, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

ROBERT J. MAYNES, ISB No. 6905
*Attorney at Law*
P. O. Box 3005
Idaho Falls, ID 83405
Telephone: (208) 552-6442
Facsimile: (208) 522-1334
Email: mayneslaw@hotmail.com



*Attorney for Debtor*

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| In Re: | Case No. 11-40128 JDP |
| DAVID O. KINGSTON, | Chapter 11 |
| Debtor. | |

**STIPULATION BETWEEN DAVID O. KINGSTON AND BANK OF AMERICA, NA FOR: (1) PLAN TREATMENT; (2) USE OF CASH COLLATERAL/REIMBURSEMENT OF § 506(c) EXPENSES; AND (3) SURRENDER OF 1031 S. AND 2051 S. ISLAND GREEN DRIVE, COEUR D'ALENE, IDAHO**

COMES NOW DAVID O. KINGSTON, the Debtor-in-possession ("Kingston"), by and through his attorney of record, Robert J. Maynes, Esq., and BANK OF AMERICA, NA ("BOA"), by and through its attorney of record, Lance E. Olsen, Esq. of Routh Crabtree Olsen, P.S. and hereby enter into the following Stipulation for (1) Plan Treatment; (2) Use of Cash Collateral/Reimbursement of § 506(c) Expenses; and (3) Surrender of 1031 S. and 2051 S. Island Green Drive, Coeur d'Alene, ID as follows:

### RECITALS

WHEREAS the above captioned bankruptcy estate currently asserts an interest in a number of pieces of real property commonly described as Spanish Palms Condominiums, Las Vegas, NV, Units 1034, 1061, 1062, 1063, 1064, 2034, 2061, 2062, 2063, & 2064 ("SP Unit") (10 Units total--collectively the SP Units are referred to herein

EXHIBIT "A"

20150521

as the "LV Properties") and 1031 S. and 2051 S. Island Green Drive, Coeur d'Alene, ID (the "CDA Properties");

WHEREAS Bank of America ("BOA") has filed Proofs of Claim asserting a secured claim ("Claim/Lien") against the LV and CDA Properties constituting Claim Nos. 6, 8, 14, 16, 17, 19, 20, 21, 23, 30 and 31;

THEREFORE, THE DEBTOR AND BOA HEREBY AGREE THAT FOR ADEQUATE PROTECTION AND PLAN TREATMENT OF BOA's CLAIMS/LIENS, SUCH CLAIMS/LIENS AS TO THE LV AND CDA PROPERTIES WILL BE PAID AS FOLLOWS:

1.      For all purposes, including, but not limited to plan confirmation, the current fair market value of the LV Properties is stipulated to be the "Cram Down Amount" as listed below:

| LV Properties | Cram Down Amt: |
|---|---|
| Spanish Palms (SP) Unit 1034 | 76,000.00 |
| SP Unit 1061 | 76,000.00 |
| SP Unit 1062 | 95,000.00 |
| SP Unit 1063 | 95,000.00 |
| SP Unit 1064 | 76,000.00 |
| SP Unit 2034 | 76,000.00 |
| SP Unit 2061 | 76,000.00 |
| SP Unit 2062 | 95,000.00 |
| SP Unit 2063 | 95,000.00 |
| SP Unit 2064 | 76,000.00 |

2.      Commencing within fifteen (15) days after entry of an Order approving this Stipulation and continuing monthly thereafter, the Debtor shall, as adequate protection and plan treatment, pay monthly payments from the rents associated with the LV Properties as follows:

STIPULATION BETWEEN DAVID O. KINGSTON AND BANK OF AMERICA, NA FOR: (1) PLAN TREATMENT; (2) USE OF CASH COLLATERAL/REIMBURSEMENT OF § 506(c) EXPENSES; AND (3) SURRENDER OF 1031 S. AND 2051 S. ISLAND GREEN DRIVE, COEUR D'ALENE, IDAHO

2

**EXHIBIT "MM"**
**Page 52 of 57**

| LV Properties | Payment on Secured Claim |
|---|---|
| SP Unit 1034 | 362.84 |
| SP Unit 1061 | 362.84 |
| SP Unit 1062 ✓ | 452.54 |
| SP Unit 1063 | 452.54 |
| SP Unit 1064 | 362.84 |
| SP Unit 2034 | 362.84 |
| SP Unit 2061 | 362.84 |
| SP Unit 2062 | 452.54 |
| SP Unit 2063 ✓ | 452.54 |
| SP Unit 2064 | 362.84 |

3.    Simple interest shall accrue on the Cram Down Amounts noted above and shall be included in the respective liens for the Properties (with no cross collateralization of the secured claims on the respective properties) from the date of Court approval of this Stipulation on a fixed rate of 4.0% a.p.r., with no prepayment penalty.

4.    The Cram Down Amounts shall be amortized on a thirty-year (30-year) term commencing on the date of Court approval of this Stipulation.

5.    Payments shall be applied first towards accrued interest, then to the remaining principal on the Cram Down Amounts.

6.    Pursuant to the terms of this Stipulation, and provided the Debtor is current with the monthly payment obligation required pursuant to Paragraph 2 above (approximately $9,000.00 for the Cram Amounts referenced above, including interest and principal), the Debtor is authorized to pay from the rents associated with the Properties all expenses associated with the Properties, including, but not limited to HOA fees, utilities, landscaping, maintenance, real property taxes, insurance, management fees, leasing bonus and lease renewal fees, case administration costs, etc.

STIPULATION BETWEEN DAVID O. KINGSTON AND BANK OF AMERICA, NA FOR: (1) PLAN TREATMENT; (2) USE OF CASH COLLATERAL/REIMBURSEMENT OF § 506(c) EXPENSES; AND (3) SURRENDER OF 1031 S. AND 2051 S. ISLAND GREEN DRIVE, COEUR D'ALENE, IDAHO
3

7.      The parties to this Stipulation hereby acknowledge that since the filing of
the petition the Debtor has expended $5,011.00 out-of-pocket (as of July 15, 2011), with
approximately $36,088.57 incurred but not paid, accruing on a monthly basis thereafter
for the benefit of the LV Properties, respectively, for HOA Fees, utilities, landscaping,
maintenance, insurance, management fees, debt service, etc. and as a result gross rents
have been held and are accruing in a segregated DIP account.  Pursuant to this Stipulation
and under 11 USC § 506(c), such funds in the amount of approximately $41,099.57
($5,011.00 plus $36,088.57) (the "Reimbursement Amount") may be withdrawn from the
segregated DIP account and the same shall not constitute cash collateral and shall be
placed into the Debtor's DIP operating account for the benefit of the Debtor and this
estate.  To the extent any of these items are in arrears for post-petition amounts, the
Debtor can use proceeds from the segregated rents to bring the same current.

8.      SURRENDER OF CDA PROPERTIES(2):  Upon Court approval of this
Stipulation, the CDA Properties shall be deemed surrendered by the Debtor to BOA and
the automatic stay with respective to these two properties shall be lifted to allow BOA to
take possession of these two properties pursuant to state law.

9.      The Debtor hereby agrees to incorporate the terms of this Stipulation in
any proposed Plan of Reorganization submitted by the Debtor for confirmation and BOA
is willing to consent to such a Plan of Reorganization under the terms and conditions
stated herein.  The Parties specifically agree that all terms and conditions of this
Stipulation shall become an integral part of and shall be incorporated into any Plan of
Reorganization proposed by the Debtor.

STIPULATION BETWEEN DAVID O. KINGSTON AND BANK OF AMERICA, NA FOR: (1) PLAN
TREATMENT; (2) USE OF CASH COLLATERAL/REIMBURSEMENT OF § 506(c) EXPENSES; AND
(3) SURRENDER OF 1031 S. AND 2051 S. ISLAND GREEN DRIVE, COBUR D'ALENE, IDAHO
4

10.    Retained Jurisdiction: The Bankruptcy Court shall have and retain jurisdiction over the parties, the subject matter of this Stipulation, any order approving the same and for the purposes of resolving any dispute relating to the rights and duties of the Parties specified hereunder.

11.    The Parties further acknowledge and agree that this Stipulation is expressly contingent upon Court approval. The Debtor shall be responsible for seeking Court approval of this Stipulation in a timely fashion. In the event the Court refuses to approve this Stipulation, the terms of this Stipulation shall not be binding upon the Parties and shall be of no further force and effect.

DATED:    August __, 2011

ROUTH CRABTREE OLSEN, P.S.

LANCE E. OLSEN, ESQ.
Counsel for Bank of America, NA

DATED:    August //, 2011

MAYNES LAW OFFICE

ROBERT J. MAYNES
Debtor's Counsel

STIPULATION BETWEEN DAVID O. KINGSTON AND BANK OF AMERICA, NA FOR: (1) PLAN TREATMENT; (2) USE OF CASH COLLATERAL/REIMBURSEMENT OF § 506(c) EXPENSES; AND (3) SURRENDER OF 1031 S. AND 2051 S. ISLAND GREEN DRIVE, COEUR D'ALENE, IDAHO
5

01/17/18

DAVID O KINGSTON

477 SHOUP AVE STE 20

IDAHO FALLS          ID 83402

Collateral

Account Number 1461015125

| | | |
|---|---|---|
| Original Balance | 162500.00 | P&I Payment | 452.54 |
| Current Balance | 83534.40 | Escrow Payment | 0.00 |
| Escrow Balance | -4427.70 | Opt Ins Payment | 0.00 |
| Unapplied Balance | 0.00 | Buydown | 0.00 |
| Fee Balance | -75.00 | Total Payment | 452.54 |

| | |
|---|---|
| Next Due Date | 11/01/17 |
| Last Payment Date | 12/08/17 |
| Current Interest Rate | 4.00000 |

Ending statement balance        83534.40

History from 06/01/17 through 01/17/18  Beginning statement balance        84914.35

| Posting Date | Effective Date | Paid To Date | Transaction Description | Total Amount | Principal | Interest | Escrow | Insurance | Other |
|---|---|---|---|---|---|---|---|---|---|
| 06/06/17 | 02/01/17 | | UNCOLL LATE CHARGE | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -45.36 L |
| 06/06/17 | 02/01/17 | | ADMIN ADJUSTMENT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -45.36 L |
| 06/06/17 | 02/01/17 | | ADMIN ADJUSTMENT | 0.00 | 0.00 | 0.00 | -3933.64 | 0.00 | 0.00 |
| 06/06/17 | 02/01/17 | | FEE BILLED | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 75.00 F |
| 06/13/17 | 02/01/17 | | MISC RECEIPT | 247.95 | 0.00 | 0.00 | 0.00 | 0.00 | 247.95 N |
| 06/29/17 | 06/06/17 | | MISC RECEIPT | 453.54 | 0.00 | 0.00 | 0.00 | 0.00 | 453.54 N |
| 07/10/17 | 03/01/17 | | PAYMENT | 453.54 | 170.49 | 283.05 | 0.00 | 0.00 | 0.00 |
| 07/10/17 | 07/10/17 | | UNCOLL LATE CHARGE | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -22.67 L |
| 07/10/17 | 03/01/17 | | ADMIN ADJUSTMENT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -22.67 L |
| 07/10/17 | 06/13/17 | | MISC RECEIPT | 247.95 | 0.00 | 0.00 | 0.00 | 0.00 | 247.95 N |
| 07/10/17 | 03/01/17 | | MISC RECEIPT | -701.49 | 0.00 | 0.00 | 0.00 | 0.00 | -701.49 N |
| 07/11/17 | 04/01/17 | | PAYMENT | 453.54 | 171.06 | 282.48 | 0.00 | 0.00 | 0.00 |
| 07/11/17 | 07/11/17 | | UNCOLL LATE CHARGE | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -22.67 L |
| 07/11/17 | 04/01/17 | | ADMIN ADJUSTMENT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -22.67 L |
| 07/27/17 | 04/01/17 | | ESCROW DISBURSEMENT | -247.93 | 0.00 | 0.00 | -247.93 | 0.00 | 0.00 |
| 08/07/17 | 05/01/17 | | PAYMENT | 453.54 | 171.63 | 281.91 | 0.00 | 0.00 | 0.00 |
| 08/07/17 | 08/07/17 | | UNCOLL LATE CHARGE | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 45.34 L |
| 08/07/17 | 05/01/17 | | MISC RECEIPT | 45.34 | 0.00 | 0.00 | 0.00 | 0.00 | 45.34 L |

Buydown/Subsidy        F= Fee Payment        L= Late Charges        N= Unapplied

01/17/18

Account Number 1461015125

DAVID O KINGSTON

| Posting Date | Effective Date | Paid To Date | Transaction Description | Total Amount | Principal | Interest | Escrow | Insurance | Other |
|---|---|---|---|---|---|---|---|---|---|
| 08/07/17 | 08/07/17 | 05/01/17 | MISC RECEIPT | 34.72 | 0.00 | 0.00 | 0.00 | 0.00 | 34.72 N |
| 08/17/17 | 08/17/17 | 05/01/17 | ADMIN ADJUSTMENT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 09/06/17 | 09/04/17 | 06/01/17 | PAYMENT | 453.54 | 172.20 | 281.34 | 0.00 | 0.00 | 0.00 |
| 09/06/17 | 09/04/17 | 06/01/17 | MISC RECEIPT | 80.06 | 0.00 | 0.00 | 0.00 | 0.00 | 80.06 N |
| 09/20/17 | 09/20/17 | 06/01/17 | ESCROW DISBURSEMENT | -246.13 | 0.00 | 0.00 | -246.13 | 0.00 | 0.00 |
| 10/10/17 | 10/06/17 | 07/01/17 | PAYMENT | 453.54 | 172.78 | 280.76 | 0.00 | 0.00 | 0.00 |
| 10/10/17 | 10/06/17 | 07/01/17 | MISC RECEIPT | 80.04 | 0.00 | 0.00 | 0.00 | 0.00 | 80.04 N |
| 10/31/17 | 10/31/17 | 07/01/17 | ADMIN ADJUSTMENT | 0.00 | 0.00 | 0.00 | 4427.70 | 0.00 | 0.00 |
| 10/31/17 | 05/01/17 | 05/01/17 | MISC RECEIPT | -896.31 | -172.78 | -280.76 | 0.00 | 0.00 | -442.77 N |
| 10/31/17 | 05/01/17 | 05/01/17 | MISC RECEIPT | -453.54 | -172.20 | -281.34 | 0.00 | 0.00 | 0.00 |
| 10/31/17 | 05/01/17 | 06/01/17 | MISC RECEIPT | 896.31 | 172.20 | 281.34 | 0.00 | 0.00 | 442.77 N |
| 10/31/17 | 05/01/17 | 07/01/17 | MISC RECEIPT | 453.54 | 172.78 | 280.76 | 0.00 | 0.00 | 0.00 |
| 10/31/17 | 10/31/17 | 07/01/17 | ADMIN ADJUSTMENT | 0.00 | 0.00 | 0.00 | -4427.70 | 0.00 | 0.00 |
| 11/07/17 | 11/06/17 | 07/01/17 | MISC RECEIPT | 533.58 | 0.00 | 0.00 | 0.00 | 0.00 | 533.58 N |
| 11/13/17 | 11/13/17 | 08/01/17 | UNCOLL LATE CHARGE | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -22.67 L |
| 11/13/17 | 11/06/17 | 08/01/17 | PAYMENT | 0.00 | 173.35 | 280.19 | 0.00 | 0.00 | -453.54 N |
| 12/04/17 | 12/04/17 | 08/01/17 | UNCOLL LATE CHARGE | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 22.67 L |
| 12/04/17 | 12/04/17 | 08/01/17 | ADMIN ADJUSTMENT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 22.67 L |
| 12/08/17 | 12/07/17 | 08/01/17 | MISC RECEIPT | 533.58 | 0.00 | 0.00 | 0.00 | 0.00 | 533.58 N |
| 12/11/17 | 12/07/17 | 09/01/17 | PAYMENT | 0.00 | 173.93 | 279.61 | 0.00 | 0.00 | -453.54 N |
| 12/20/17 | 12/08/17 | 10/01/17 | PAYMENT | 453.54 | 174.51 | 279.03 | 0.00 | 0.00 | 0.00 |
| 12/20/17 | 12/08/17 | 10/01/17 | MISC RECEIPT | -293.46 | 0.00 | 0.00 | 0.00 | 0.00 | -293.46 N |
| 12/20/17 | 12/08/17 | 10/01/17 | MISC RECEIPT | -160.08 | 0.00 | 0.00 | 0.00 | 0.00 | -160.08 N |
| 01/04/18 | 01/03/18 | 10/01/17 | MISC RECEIPT | 533.58 | 0.00 | 0.00 | 0.00 | 0.00 | 533.58 N |

B= *Buydown/Subsidy*   F= *Fee Payment*   L= *Late Charges*   N= *Unapplied*